**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

**DELL MARKETING, L.P.,**
                              **Plaintiff,**

**-vs-**                                                    **Case No.  A-10-CA-590-SS**

**INCOMPASS IT, INC.,**
                              **Defendant.**
_____

## O R D E R

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendant Incompass IT, Inc. (Incompass)'s Motion to Dismiss for Lack of Jurisdiction (Def. Mot.) [#10], Plaintiff Dell Marketing, LP (Dell)'s response (Pl. Resp.) [#26], and Incompass's reply [#33]; Dell's Motion to Dismiss Counterclaims [#19] and Incompass's response [#31]; and Dell's Motion to Dismiss Second Amended Counterclaims [#38], Incompass's response [#42] thereto, and Dell's reply [#44]; and Dell's [#49] and Incompass' [#50] supplemental memoranda. Having reviewed the motions, the relevant case law, and the file as a whole, the Court now enters the following opinion and orders DISMISSING this case without prejudice for lack of personal jurisdiction.

### Background

This case arises out of an alleged debt owed to Dell Marketing, LP by one of its resellers, Incompass IT, Inc.[1]  Dell originally filed suit in County Court at Law #1, Travis County, Texas, on

_____

[1] As a reseller, Incompass would purchase products from Dell and resell them to its own customers.

July 19, 2010.  Dell alleged Incompass owed just over $75,000 for Dell products Incompass had purchased and received, but not paid for.  Dell sued to collect the debt and for unjust enrichment.

On August 9, 2010, Incompass removed to this Court on the basis of diversity.  On August 23, 2010, Incompass filed its First Amended Answer [#8], in which it answered Dell's state court complaint.  In its First Amended Answer, Incompass also denied some of Dell's jurisdictional allegations, raised lack of personal jurisdiction as an affirmative defense, and asserted counterclaims against Dell.  Defendant's First Amended Answer [#8] at ¶¶ 4, 10, 14–61.

On September 9, 2010, Incompass filed a motion to dismiss for lack of personal jurisdiction and improper venue or, in the alternative, to transfer the case to the District of Minnesota [#10].  Dell fired back on September 16, 2010, with a motion to dismiss Incompass' counterclaims [#19].

On the same day, Dell amended its complaint [#20], substantially fleshing out its factual allegations and making a single claim for breach of contract.  Incompass filed its Second Amended Answer [#29] on September 30, 2010.  In its answer, Incompass again denied Dell's allegations regarding personal jurisdiction and asserted the affirmative defense of lack of personal jurisdiction. Defendant's Second Amended Answer [#29] at ¶¶ 5, 34.  In addition, although it made minor changes and alleged more facts, Incompass essentially reasserted its prior counterclaims against Dell.[2]  *Id.* at ¶¶ 39–91.  On October 18, 2010, when Dell filed an updated  motion to dismiss Incompass' amended counterclaims [#38].

The Court determined it needed additional information to decide the question of its personal jurisdiction over Incompass, and consequently ordered a hearing be held on December 20, 2010.  The

---

[2] In a fit of pique, or perhaps as a test of the Court's perceptiveness, Incompass humorously—if unprofessionally—referred to Dell as "Known Poacher," and denied the "snarky allegations" in paragraph 23 of Dell's complaint.  Defendant's Second Amended Answer [#29] at ¶ 24.

parties requested the opportunity to supplement their briefing to address the questions the Court asked at the hearing, and the Court granted them ten days in which to do so.  Both parties filed supplemental memoranda [#49, 50] on December 30, 2010.

Because the Court finds the arbitration clause in the contract between Dell and Incompass is illusory, and because Incompass otherwise lacks minimum contacts with Texas, the Court now DISMISSES this case for lack of personal jurisdiction.

I.      **Motion to Dismiss for Lack of Personal Jurisdiction or Improper Venue [#10]**

A.      **Personal Jurisdiction — Legal Standard**

To determine whether a federal district court sitting in diversity has personal jurisdiction over a nonresident defendant, the district court considers first whether exercising jurisdiction over the defendant comports with due process.  *Religious Tech. Ctr. v Liebreich*, 339 F.3d 369, 373 (5th Cir. 2003).   If the requirements of due process are satisfied, the court then determines whether the exercise of jurisdiction is authorized by the jurisdictional "long-arm" statute of the state in which the court sits.  *Id.*  Because the Texas long-arm statute has been interpreted as extending to the limit of due process, the two inquiries are the same for district courts in Texas.  *Id.*; *see* Tex. Civ. Prac. & Rem. Code Ann. § 17.001–17.093.

"The Due Process Clause of the Fourteenth Amendment limits the power of a state court to render a valid personal judgment against a nonresident defendant." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980).  One requirement of due process is that the nonresident defendant be properly subject to the personal jurisdiction of the court in which the defendant is sued. *Id.*

The Supreme Court has articulated a two-pronged test to determine whether a federal court may properly exercise jurisdiction over a nonresident defendant: (1) the nonresident must have minimum contacts with the forum state, and (2) subjecting the nonresident to jurisdiction must be consistent with "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Freudensprung v. Offshore Technical Svcs., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004).

A defendant's "minimum contacts" may give rise to either specific personal jurisdiction or general personal jurisdiction, depending on the nature of the suit and defendant's relationship to the forum state. *Freudensprung*, 379 F.3d at 343. "A court may exercise specific jurisdiction when (1) the defendant purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; and (2) the controversy arises out of or is related to the defendant's contacts with the forum state." *Id.* Even when the controversy is not related to the defendant's contacts with the forum state, however, a court may nevertheless exercise general jurisdiction over the defendant if the defendant has engaged in "continuous and systematic contacts" in the forum. *Id.* Of course, if a defendant satisfies neither of these tests, the exercise of personal jurisdiction is not proper. *International Shoe*, 326 U.S. at 316.

Federal Rule of Civil Procedure 12(b)(2) allows a defendant to assert lack of personal jurisdiction as a defense to suit. FED. R. CIV. P. 12(b)(2). "Because the requirement of personal jurisdiction represents first of all an individual right, it can, like other such rights, be waived." *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982). The Federal Rules indicate a defendant waives the right to challenge personal jurisdiction under two circumstances: first, the right is waived if a defendant files a motion under Rule 12 that asserts some

defenses, but omits an available challenge to personal jurisdiction; second, unless a defendant either challenges personal jurisdiction by motion, or includes it as a defense in a responsive pleading, the challenge is waived.  FED. R. CIV. P. 12(h).

The plaintiff has the burden of making a prima facie case that a defendant has sufficient "minimum contacts" with the forum state to justify that state's exercise of either specific or general jurisdiction.  *Freudensprung*, 379 F.3d at 343.  If the plaintiff does so, the burden shifts to the defendant to show that such an exercise offends due process because it is not consistent with traditional notions of fair play and substantial justice.  *Id.*  Finally, when a court rules on a 12(b)(2) motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, it must accept the non-moving party's jurisdictional allegations as true and resolve all factual disputes in its favor.  *Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 625 (5th Cir. 1999).

**B.     Analysis**

**1.     Timeliness**

As a threshold matter, Dell challenges the timeliness of Incompass' motion.  In support of this contention, Dell relies on language in Rule 12(b) stating a motion asserting defenses under 12(b)(2) or 12(b)(3) "must be made before pleading if a responsive pleading is allowed."  FED. R. CIV. P. 12(b).  Because Incompass filed its answer before its motion to dismiss, Dell argues, the motion is untimely under Rule 12.  The Court disagrees.

Admittedly, the language of Rule 12(b) appears to support Dell's position.  However, Dell's interpretation clashes with the language of Rule 12(h), which governs waiver of defenses.  As noted above, Rule 12(h) provides that challenges to personal jurisdiction and venue are waived only if they are not either asserted by motion or included in a responsive pleading.  FED. R. CIV. P. 12(h).

Combining the terms of 12(h) with Dell's interpretation of 12(b) would lead to a bizarre and probably unintended result: certain defenses included only in a responsive pleading would not be waived, but could not be asserted by motion. These defenses—including a challenge to the court's authority over a defendant—would presumably have to be resolved sua sponte by the court, or at trial. There is no apparent justification for a rule of this sort; the court therefore looks for an alternate interpretation of Rule 12(b).[3]

A more plausible interpretation of Rule 12(b) comes from looking at its text prior to the December 1, 2007 amendments which were "stylistic only" and, ironically, intended to make the rule "more easily understood." FED. R. CIV. P. 12, 2007 Amendment Advisory Committee Note. Former Rule 12(b) stated in part: "Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion . . ." Fed. R. Civ. P. 12(b) (2007) (amended 2009). The Rule went on to list the traditional 12(b) defenses, including lack of personal jurisdiction and improper venue, and contained the requirement that a motion asserting such defenses "shall be made before pleading if a further pleading is permitted." *Id.*

The text of former Rule 12(b) suggests an interpretation more consistent with the waiver provisions of Rule 12(h): All defenses must be included in a responsive pleading, *except* the defenses in 12(b)(1)–(7), which may *instead* be made by motion alone. However, if these defenses are

---

[3] Apparently realizing Rule 12(h) conflicts with its position, Dell concedes Incompass has not waived its right to challenge personal jurisdiction. Rather, Dell argues, Incompass must make such a challenge in a Rule 56 motion for summary judgment. However, Dell's argument is that Rule 12(b) requires "a motion" challenging personal jurisdiction be made before a responsive pleading is filed. A motion for summary judgment would inevitably be made after a responsive pleading was filed; and a motion for summary judgment is, of course, "a motion," so it is difficult to understand how even this would be permissible under Dell's literal interpretation of 12(b).

asserted by motion alone, they must be asserted prior to the filing of a responsive pleading.  In either case, these defenses must be asserted at the first opportunity.

This interpretation is consistent with commentary, case law, and common sense.  Wright and Miller's Federal Practice and Procedure states:

> [T]he message conveyed by the present version of Rule 12(h)(1) seems quite clear. It advises a litigant to exercise great diligence in challenging personal jurisdiction, venue, or service of process. If that party wishes to raise any of these defenses, that must be done at the time the first significant defensive move is made—whether it be by way of a Rule 12 motion or a responsive pleading.

5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1391 (3d ed. 2010).  Very similar language by Wright and Miller has been cited with approval by the Fifth Circuit.  *T & R Enters., Inc. v. Cont'l Grain Co.*, 613 F.2d 1272, 1277 (5th Cir. 1980).  In its own words, the Fifth Circuit has held: "A party may appear generally and yet object to personal jurisdiction at any time before the answer is filed or in the answer."  *Trans World Airlines, Inc. v. Mattox*, 897 F.2d 773 (5th Cir. 1990), *abrogated on other grounds by Heimann v. Nat'l Elevator Indus. Pension Fund*, 187 F.3d 493 (5th Cir. 1999).

The Fifth Circuit has also rejected 12(b) arguments similar to the one made by Dell:

> The response contended that the government could not file a motion to dismiss for failure to state a claim nine months after it filed a responsive pleading because, under Federal Rule of Civil Procedure 12(b), such a motion must be made "before pleading if a further pleading is permitted." This argument lacks merit.

*Stearman v. C.I.R.*, 436 F.3d 533, 536 n.6 (5th Cir. 2006).  The court rejected the argument in light of the waiver provisions in Rule 12(h).[4]  *Id.*

---

[4] Although the waiver provisions of 12(h) are different for a 12(b)(6) defense than for either a 12(b)(2) or 12(b)(3) defense, the court did not suggest these differences were determinative.

Further, the Fifth Circuit has upheld the validity of a challenge to personal jurisdiction filed much later than the one in this case.  In *Brokerwood Intern. (U.S.), Inc. v. Cuisine Crotone, Inc.*, 104 F. App'x 376 (5th Cir. 2004)

Finally, there is simply no good reason to adopt the interpretation urged by Dell. From the time Incompass filed its first answer, approximately one month after Dell filed its suit and fourteen days after removal to this Court, Dell was on notice Incompass might challenge personal jurisdiction. Dell can claim neither surprise nor prejudice. Moreover, there is no principled reason to distinguish between a motion to dismiss based on lack of personal jurisdiction filed one day before the answer, concurrent with the answer, or one day after the answer, provided the issue is raised in the "first significant defensive move."

The defenses enumerated in Rule 12(b) are designed to allow a court to dispose of defective cases early, without having to consider the underlying merits; this saves resources for both courts and litigants. The purpose of these defenses would be needlessly defeated if a defendant was not allowed to assert such defenses in a motion simply because the defendant asserted them first in an answer. Thus, the Court rejects Dell's untimeliness argument and proceeds to the merits of Incompass' motion.

## 2.    Personal Jurisdiction

In keeping with the traditional order prescribed by the Supreme Court, this Court addresses the question of personal jurisdiction before any other Rule 12 motion. *Leroy v. Great Western United Corp.*, 443 U.S. 173, 180 (1979). In its complaint, Dell states this Court has personal

---

(unpublished), the defendant filed its motion to dismiss seven months after including the defense in its answer. *Brokerwood*, 104 F. App'x at 379. The Court not only concluded the defendant had not waived its challenge, but also addressed the merits of the defense and found personal jurisdiction was lacking. *Id.* at 381–83.

Admittedly, however, the Fifth Circuit has not always reached a conclusion consistent with this Court's interpretation of Rule 12(b). In *Jones v. Greninger*, 188 F.3d 322 (5th Cir. 1999), the court stated in passing: "Because a rule 12(b) motion must be filed before responsive pleadings, the appellees' motion was untimely." *Jones*, 188 F.3d at 324. However, the court made this statement in the course of approving the district court's treatment of the untimely 12(b) motion as a 12(c) motion on the pleadings. *Id.* Because the standards for deciding a 12(c) motion are the same as for deciding a 12(b) motion, there seems little practical effect to this distinction; nor would this Court's analysis be different under Rule 12(c).

jurisdiction over Incompass "because [Incompass] has transacted business within this District, the business relationship between the parties arose from contacts and meetings that occurred in the state of Texas, and the claims arising in this lawsuit arise out of that interaction."  Amended Complaint ("Am. Compl.") [#20] at ¶ 4.  Dell thus argues for the exercise of specific, not general, jurisdiction.

In its response to Incompass' motion, Dell alleges the following "contacts" between Incompass and Texas that, it argues, give this Court specific jurisdiction over Incompass: (1) Incompass traveled to Texas to negotiate a reseller agreement and to negotiate a separate business agreement about power saving technology; (2) Incompass contacted Dell representatives in Texas regarding both potential agreements; (3) Incompass' failure to abide by the reseller agreement gave rise to Dell's claims; (4) Incompass' counterclaims arose out of its contacts with Texas; and (5) Incompass agreed to arbitrate disputes about the reseller arrangement in Austin, Texas.

In reply, Incompass argues, and the Court agrees, the first three contacts alone are insufficient to establish specific jurisdiction.  In *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773 (5th Cir. 1986), the Fifth Circuit described the contacts between the defendant and the forum as:

> (1) Harvey entered into a contract with Holt, a Texas corporation; (2) Harvey sent a final revised joint operating agreement from Oklahoma to Texas; (3) Harvey sent three checks from Oklahoma to Texas in partial performance of its contractual obligations; and (4) Harvey engaged in extensive telephonic and written communication with Holt.

*Holt*, 801 F.2d at 777–78.  In rejecting these contacts as insufficient to establish specific jurisdiction over the defendant, the court reiterated prior holdings that "merely contracting with a resident of the forum state is insufficient to subject the nonresident to the forum's jurisdiction."  *Id.* at 778.  It further suggested that most of these contacts "rested on nothing but 'the mere fortuity that [the

plaintiff] happen[ed] to be a resident of the forum.'" *Id.* (quoting *Patterson v. Dietze, Inc.*, 764 F.2d 1145, 1147 (5th Cir. 1985)).

Incompass' contacts here, unlike the defendant's in *Holt*, also included a physical trip to Texas to negotiate agreements.  While this visit is relevant to personal jurisdiction analysis, the Fifth Circuit in a similar case indicated two such trips were not "sufficient to alter the basic quality and nature of [the defendant's] contact with the state of Texas." *Hydrokinetics, Inc. v. Alaska Mech., Inc.*, 700 F.2d 1026, 1029 (5th Cir. 1983).  Moreover, one of Incompass' trips was for a purpose unrelated to the subject matter of this lawsuit.  Finally, although a close, long-term contractual relationship can make one contracting party amenable to specific jurisdiction in the forum in which the other contracting party resides, see *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985), in this case there is insufficient evidence the relationship between these parties was significantly more than that of buyer and seller.   Thus, the Court concludes the first three contacts alleged by Dell are insufficient to establish personal jurisdiction over Incompass.

Dell's fourth alleged "contact," Incompass' counterclaims, does not change this result.  The Fifth Circuit has held "the filing of a counterclaim, cross-claim, or third-party demand does not operate as a waiver of an objection to jurisdiction, whether that objection is raised by motion or answer, provided that the objection is not otherwise waived in the course of the litigation." *Bayou Steel Corp. v. M/V Amstelvoorn*, 809 F.2d 1147, 1149 (5th Cir. 1987).  This holding was restated slightly in *PaineWebber Inc. v. Chase Manhattan Private Bank (Switzerland)*, 260 F.3d 453 (5th Cir. 2001): "[I]n this circuit, the filing of a counterclaim, cross-claim, or third-party claim does not, without more, waive an objection to personal jurisdiction." *PaineWebber*, 260 F.3d at 461. Although these cases refer to waiver rather than minimum contacts, asserting counter-claims when

-10-

one has already been sued is hardly the sort of purposeful availment that gives rise to personal jurisdiction.  Moreover, the controversy that underlies the lawsuit can hardly be said to arise out of the defendant's counterclaim.  Indeed, the relationship seems to be exactly the opposite, that a defendant's counterclaim arises out of both the controversy and the fact the defendant has been sued.  Thus, the Court finds Incompass' counterclaims insufficient to establish personal jurisdiction, alone or in combination with Dell's first three contacts.

**a.     Arbitration Clause**

The Court has rejected Dell's first four alleged contacts as insufficient to support personal jurisdiction over Incompass.  The final contact, and the one most significant to the Court's personal jurisdiction analysis, is the arbitration clause in the Reseller Agreement between Dell and Incompass.  As noted above, personal jurisdiction is a defendant's privilege and may be waived.  This waiver can be express or implied.  *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982).  An agreement to arbitrate in a particular forum is one means by which a litigant can impliedly accept personal jurisdiction in that forum.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985); *Ins. Corp. of Ireland*, 456 U.S. at 703; *PaineWebber*, 260 F.3d at 461.

The Court therefore concludes if Incompass agreed to arbitrate this dispute in Austin, Texas, and if the arbitration clause was valid, then Incompass impliedly consented to personal jurisdiction by this Court.

Here, Dell has provided evidence of an arbitration agreement between Incompass and Dell providing that arbitration would take place in Austin, Texas and be governed by Texas law.  First Amended Complaint (FAC), Ex. A-3a at ¶ 15; *Id.* Ex. A-3b at ¶ 11; *Id.* Ex. A-3c at ¶ 11.  This agreement was incorporated by reference through a statement on the front of each invoice that read:

"PLEASE REVIEW DELL'S TERMS & CONDITIONS OF SALE AND POLICIES AT www.dell.com/us/policy OR UPON REQUEST, WHICH GOVERN THIS TRANSACTION." *See, e.g.*, FAC, Ex. A-1a.

Despite the hearing and the parties' additional briefing, there is still a factual dispute regarding whether Incompass agreed to the terms and conditions of Dell's Reseller Agreement. However, because the Court ultimately concludes the arbitration clause is illusory, the resolution of this factual dispute is unnecessary. For the purpose of the Court's analysis, it will assume Incompass did indeed agree to the terms and conditions through an online registration process, as Dell contends.

"In determining whether the parties have agreed to arbitrate the dispute in question, we must consider (1) whether a valid agreement to arbitrate between the parties exists; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *PaineWebber*, 260 F.3d at 462. "[I]n determining whether the parties agreed to arbitrate a certain matter, courts apply the contract law of the particular state that governs the agreement." *Wash. Mut. Fin. Grp. LLC v. Bailey*, 364 F.3d 260, 264 (5th Cir. 2004).

Under Texas law, the arbitration clause at issue in this case is illusory and therefore not legally binding. In *Morrison v. Amway Corp.*, 517 F.3d 248 (5th Cir. 2008), the Fifth Circuit found an arbitration clause was illusory where there was "no express exemption of the arbitration provisions from Amway's ability to unilaterally modify all rules, and the only express limitation on that unilateral right [was] published notice." *Morrison*, 517 F.3d at 254.

Here, those who contracted with Dell had to agree to terms and conditions that stated, in part: "These terms and conditions are subject to change at any time in Dell's sole discretion without prior written notice." *See* FAC, Ex. A at 43, 54, 66. Unlike in *Morrison*, in this case Dell did not even

have to provide published notice of its unilateral modification of the arbitration clause. Thus, the argument for finding Dell's arbitration clause illusory is even stronger in this case than in *Morrison*.

Further, with respect to the arbitration clause in *Morrison*, the Fifth Circuit stated: "While it is inferable that an amendment thus unilaterally made by Amway to the arbitration provision would not become effective until published, there is nothing to suggest that once published the amendment would be inapplicable to disputes arising, or arising out of events occurring, *before* such publication." *Morrison*, 517 F.3d at 254. Here, this Court was likewise unable to find language in the Reseller Agreement precluding amendment with retroactive effect. The possibility of such amendment at Dell's sole discretion strengthens the Court's conclusion the arbitration clause is illusory.

The Fifth Circuit in *Morrison* considered several Texas cases on illusory arbitration agreements, including *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223 (Tex. 2003), in which the Texas Supreme Court noted, "most courts that have considered this issue have held that, if a party retains the unilateral, unrestricted right to terminate the arbitration agreement, it is illusory." *Davidson*, 128 S.W.3d at 231. The *Davidson* court further noted in a previous case it "rejected the argument that the arbitration agreement at issue was illusory because, among other things, it required ten days notice of any modification or termination and stated that any such amendment would apply prospectively only." *Id.* (citing *In re Halliburton, Co.*, 80 S.W.3d 566, 569–70 (Tex. 2002)).

Based on these and other Texas authorities, the Fifth Circuit in *Morrison* concluded the arbitration clause at issue was illusory. In accordance with Texas case law and the Fifth Circuit's decision in *Morrison*, this Court reaches the same conclusion regarding the Reseller Agreement's arbitration clause.

-13-

**b.      Conclusion**

In the absence of a valid arbitration agreement, the Court finds the contacts alleged by Dell are insufficient to establish personal jurisdiction over Incompass.  The Reseller Agreement does not appear to be particularly related to Texas, except for the mere fortuity Dell happened to be a resident of the State.  Such fortuity cannot form the basis for the exercise of personal jurisdiction.  *See Patterson v. Dietze, Inc.*, 764 F.2d 1145, 1147 (5th Cir. 1985).  Nor does it appear Incompass purposefully availed itself of the protections of privileges of Texas law, beyond simply contracting in a simple buyer–seller capacity with a company in Texas.  Thus, these contacts are insufficient to establish personal jurisdiction.

If Incompass had agreed to a valid arbitration clause specifying arbitration in Austin and applying Texas law, Incompass would have waived its personal jurisdiction challenge.  However, the arbitration clause in the Dell Reseller Agreement is illusory under Texas law because it required no notice prior to amendment, and the Reseller Agreement contained no indication such amendment would not have retroactive effect.  The Court therefore finds the arbitration clause insufficient, alone or in combination with Incompass' other purported contacts with Texas, to support the exercise of personal jurisdiction.

Consequently, the Court concludes it lacks personal jurisdiction over Incompass and must dismiss this suit.

### Conclusion

Accordingly,

IT IS ORDERED THAT Incompass' Motion to Dismiss for Lack of Personal Jurisdiction [#10] is GRANTED;

-14-

IT IS FURTHER ORDERED THAT this case is DISMISSED WITHOUT PREJUDICE;

IT IS FINALLY ORDERED THAT all pending motions are DISMISSED WITHOUT PREJUDICE as moot.

SIGNED this the 9th day of February 2011.

_____
SAM SPARKS
UNITED STATES DISTRICT JUDGE